UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AREVALO-HORTUA, et al.,<br><br>Petitioners,<br><br>v.<br><br>HERNANDEZ, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02994-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Nubia Arevalo-Hortua, Alvaro Nestor Velandia Quitian, Erickson Jose Rodriguez Sanchez, Eben Joseph, and Josue David Quintero-Latan's joint Petition for Writ of Habeas Corpus. Dkt. # 1.[1] The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

[1] Respondents contend that Petitioners do not meet their individual burden to demonstrate entitlement to habeas relief and requests that the Court require Petitioners to submit supplemental briefing regarding each of their circumstances. Dkt. # 12-1 at 2-3. But the Court finds sufficient information in the petition, response, and traverse to decide the issues raised.

## II
## BACKGROUND

A. Arevalo-Hortua

Arevalo-Hortua is a 59-year-old citizen of Venezuela. Dkt. # 2 at 1. She entered the United States in December 2023. Dkt. # 2 at 2. She was processed by ICE and released on parole. Dkt. # 11 at 2. She then moved to North Dakota, where her daughter and granddaughter live. Dkt. # 2 at 2. She received work authorization and worked for more than two years at a restaurant. Dkt. # 2 at 2. On June 28, 2026, ICE detained her while she was in a car with coworkers. Dkt. # 2 at 3. She asserts that when asked why she was being detained, one ICE agent said, "[T]here was no reason." Dkt. # 2 at 3. She has no criminal history and did not have any check-in requirements with ICE. Dkt. # 2 at 3. On the day of Arevalo-Hortua's detainment, ICE served her a Notice to Appear (NTA), which stated that she is an arriving alien, was paroled into the United States until June 12, 2026, and is charged under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) as "an immigrant who, at the time of application for admission" does not possess valid entry or travel documents. Dkt. ## 10-1, 10-2; Dkt. # 11 at 2. Arevalo-Hortua is currently detained at the Northwest ICE Processing Center (NWIPC). Dkt. # 2 at 1.[2]

B. Alvaro Nestor Velandia Quitian

Velandia Quitian is a 31-year-old citizen of Colombia. Dkt. # 3 at 1. He entered the United States in September 2022. Dkt. # 3 at 2. He was detained by ICE and released on parole

[2] Respondents allege that Arevalo-Hortua received some post-deprivation process, including a custody redetermination hearing before an immigration judge (IJ) who determined that they did not have jurisdiction because Arevalo-Hortua was an arriving alien. Dkt. # 11 at 2-3. But Respondents do not argue that this process satisfied Arevalo-Hortua's due process rights.

under an Alternative to Detention (ATD) program. Dkt. # 3 at 2; Dkt. # 11 at 3. He then moved from San Jose to Seattle and lived with family members. Dkt. # 3 at 2. He worked as a delivery person and eventually rented his own apartment. Dkt. # 3 at 2. He was involved with his church community and saw his family regularly. Dkt. # 3 at 3.

In September 2023, Velandia Quitian received an NTA charging him under § 212(a)(7)(A)(i)(I) and under § 212(a)(6)(i), which relates to noncitizens present in the United States without being admitted or paroled, or who arrived in the country at a time and place other than as designated by the Attorney General. Dkt. # 10-3. Respondents state that in August 2025, Velandia Quitian failed to report to ICE as required under ATD supervision and failed to update his address, resulting in the termination of his ATD. Dkt. # 11 at 4. A year later, on August 9, 2026, ICE detained him while he was driving. Dkt. # 3 at 3. He asserts that he asked the ICE agents whether they had a warrant, and they showed him a document on their phone that had his name on it. Dkt. # 3 at 3. He is currently detained at NWIPC. Dkt. # 3 at 1.

C. Rodriguez Sanchez

Rodriguez Sanchez is a 48-year-old citizen of Venezuela. Dkt. # 4 at 1. He entered the United States in December 2023. Dkt. # 4 at 1. He was detained by border patrol and given an NTA charging him under § 212(a)(6)(i). Dkt. # 10-5. He was then released on "on [his] own recognizance (OREC)." Dkt. # 11 at 5. After being released, Rodriguez Sanchez lived in Denver and worked there. Dkt. # 4 at 2. He has no criminal history. Dkt. # 4 at 2.

On July 6, 2026, ICE detained Rodriguez Sanchez in Minnesota while he was on the way to get coffee with a friend. Dkt. # 4 at 2-3. Respondents allege that Sanchez resisted ICE agents when they removed him from his car and initially claimed he lived in Minnesota, but later stated

that he was only visiting Minnesota. Dkt. # 11 at 5. He is currently detained at NWIPC. Dkt. # 11 at 6.

D. Joseph

Joseph is a 31-year-old citizen of Haiti. Dkt. # 5 at 1. He entered the United States in March 2023 and was processed at the border. Dkt. # 5 at 2. Respondents state that in December 2023, Joseph received an NTA charging him under § 212(a)(6)(i) and § 212(a)(7)(A)(i)(I). Dkt. # 11 at 6. Respondents also say that Joseph was paroled into the United States for one year "pending removal proceedings." Dkt. # 11 at 6. Once released, Joseph moved to Florida and lived with his cousin and relatives. Dkt. # 5 at 2. He worked as a bus driver and planned to move to Boston with his girlfriend and her two kids because she had gotten a job there. Dkt. # 5 at 2.

On July 3, 2026, police arrested Joseph for driving while intoxicated and took him to a hospital to run blood tests. Dkt. # 5 at 2. He was then transferred into ICE custody. Dkt. # 5 at 3. On July 11, 2026, ICE served Joseph with a Notice of Rights and Advisals and Warrant for Arrest of Alien. Dkt. # 11 at 7. He is currently detained at NWIPC. Dkt. # 5 at 1.

E. Quintero-Latan

Quintero-Latan is a 24-year-old citizen of Venezuela. Dkt. # 6 at 1. He entered the United States in July 2023. Dkt. # 11 at 8. He was detained by border patrol, given a Notice and Order of Expedited Removal, and released due to lack of space. Dkt. # 11 at 8. Quintero-Latan applied for asylum, and his application was denied for failure to establish credible fear. Dkt. # 11 at 8. Quintero-Latan appealed this decision, and on August 4, 2023, he appeared before an IJ who affirmed the no credible fear finding and placed Quintero-Latan in expedited removal

proceedings. Dkt. # 11 at 8. On September 1, 2023, Quintero-Latan was released on an OREC and given an NTA charging him under § 212(a)(6)(i). Dkt. # 1-3. He lived in Houston and then Oregon. Dkt. # 6 at 2. While in Oregon, he worked and spent time with his partner and her family. Dkt. # 6 at 2. Respondents state that in February 2026, Quintero-Latan was ordered to report to ICE every six months. Dkt. # 11 at 8. He has not missed any ICE check-ins and has no criminal history. Dkt. # 6 at 2, 5.

On August 12, 2026, ICE detained Quintero-Latan while he was at an ICE check-in. Dkt. # 6 at 3. He is currently detained at NWIPC. Dkt. # 6 at 1. Respondents state that ICE expects it will be "able to expeditiously remove [Quintero-Latan] to Venezuela." Dkt. # 11 at 8.

## III
## DISCUSSION

Petitioners broadly argue that their re-detention without prior notice or opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[3]

A. Arevalo-Hortua, Velandia Quitian, and Rodriguez Sanchez

Respondents group Petitioners Arevalo-Hortua, Velandia Quitian, and Rodriguez Sanchez into one category: noncitizens who were not admitted into the United States and were released on parole under 8 U.S.C. § 1182(d)(5)(A). Dkt. # 12-1 at 11-12. The Court notes that based on the record, it is unclear exactly under what authority these Petitioners were released.[4]

---

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321 (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

[4] This is particularly true for Rodriguez Sanchez, as Respondents themselves submitted a declaration stating that he was released on OREC. Dkt. # 11 at 5. But whether Rodriguez Sanchez was released on humanitarian parole or OREC does not change the outcome of the Court's due process analysis regarding his right to pre-detention notice and a hearing.

But Respondents argue that the Government may validly revoke these Petitioners' parole without notice or process because (1) their parole has expired, and (2) they are subject to mandatory detention under 8 U.S.C. § 1225(b) as applicants for admission. Dkt. # 12-1 at 12.

Under 8 U.S.C. § 1225, a noncitizen "who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission fall into two sub-categories, though detention is mandatory for both." *Cuervo Marin v. Ice Field Off. Dir.*, 2026 WL 1123516, at *2 (W.D. Wash. Apr. 24, 2026). Under 8 U.S.C. § 1182(d)(5)(A), the Secretary of Homeland Security may discretionarily grant parole to these noncitizens on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." This parole may be terminated either automatically or with notice. *See* 8 C.F.R. § 212.5(e). When parole expires, it terminates automatically and written notice to the noncitizen is not required under 8 C.F.R. § 212.5(e)(1)(ii). But if DHS decides to revoke a noncitizen's parole, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen. 8 U.S.C. § 212.5(e)(2)(i). In either case, when parole is terminated, the noncitizen "shall be restored to the status that he or she had at the time of parole." *Id.*

Several courts in this District have applied the *Mathews* test and determined that neither expired parole nor a noncitizen's status as an applicant for admission allows the Government to re-detain a noncitizen without pre-deprivation notice and an opportunity to respond. *See, e.g.*, *Hernandez v. Scott*, 2026 WL 933361, (W.D. Wash. Apr. 7, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at *6-8 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d

1130, 1136-37 (W.D. Wash. 2025); *Amatbek Uulu v. Scott*, 2026 WL 865813, at *6 (W.D. Wash. Mar. 30, 2026).

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Respondents argue that Petitioners' interest in liberty from physical restraint is "substantially attenuated" by their status as applicants for admission who "never possessed a constitutional right to enter or remain in the United States." Dkt. # 12-1 at 13. But this Court agrees with the reasoning of other courts that petitioners released on parole under 8 U.S.C. § 1182(d)(5)(A), even if that parole is expired, have a liberty interest in being free from detention. *See Amatbek Uulu*, 2026 WL 865813, at *6 (stating that a "'petitioner's liberty interest [does] not expire along with his parole'" (quoting *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (citation modified))). This is particularly true where Petitioners have each lived freely in the United States for years and have significant connections and responsibilities here. *See Torres*, 2026 WL 145715, at *7 (finding that this *Mathews* factor weighed in petitioner's favor where she lived in the community on parole for six years, working and taking care of her mother). Accordingly, the first *Mathews* factor weighs in Petitioners' favor.

2. Risk of Erroneous Deprivation of Interest Through Procedures Used

For the second *Mathews* factor, Respondents argue that because Petitioners are applicants for admission subject to mandatory detention under § 1225(b), and therefore not entitled to parole, the risk of erroneous deprivation from re-detention was minimal. Dkt. # 12-1 at 13-14. But "the central issue here is the process by which re-detention occurred, not whether it was warranted." *Garcia Radillo v. Scott*, 2026 WL 2168044, at *3 (W.D. Wash. July 28, 2026). Respondents also contend that providing pre-detention notice would have created a substantial flight risk. Dkt. # 12-1 at 13-14. But they provide neither any factual justification for why they believed these Petitioners presented a flight risk nor any legal authority supporting that argument.

Respondents also claim that because Petitioners "understood their conditional parole into the United States *would* terminate at a time certain and because that time had expired, Petitioners were provided constitutionally adequate process." Dkt. # 12-1 at 14. But here, there is no evidence that Petitioners knew their parole was subject to an expiration date, and there is almost no evidence that the parole had an expiration date at all. After she was detained, Arevalo-Hortua received an NTA stating that her parole had expired earlier that month, but there is no other evidence listing this alleged expiration date. Dkt. # 10-1. And the record includes no parole documents for Velandia Quitian and Rodriguez Sanchez. Accordingly, Respondents' argument that Petitioners received adequate due process because they were aware that their parole had expired fails.

Courts in this District have found that due process for humanitarian parole requires at least that (1) the Government justify the basis for re-detention as prescribed by the statute and its implementing regulations, and (2) noncitizens are given the opportunity to be heard with the

Government's basis for re-detention at a meaningful time and in a meaningful manner. *See Torres*, 2026 WL 145715, at *7. Here, Petitioners were not given any pre-deprivation notice or opportunity to be heard regarding the termination of their parole, so the risk of erroneous deprivation was high. *See Ramirez Tesara*, 800 F. Supp. 3d at 1136 ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee."). This factor favors Petitioners.

3. Government's Interest

Regarding the final *Mathews* factor, Respondents argue that the Government has a strong interest in preventing noncitizens from remaining in the United States in violation of its laws. Dkt. # 12-1 at 14. The Court acknowledges that the Government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But the Government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.") (emphasis added). Respondents have identified no legitimate interest that would justify re-detaining Petitioners without pre-detention notice and a hearing. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137. Accordingly, this factor weighs for Petitioners.

B. Joseph

The *Mathews* analysis above applies to Petitioner Joseph, as Respondents contend that Joseph is also an applicant for admission subject to mandatory detention after termination of humanitarian parole. Dkt. # 12-1 at 15. Yet Respondents argue that because Joseph was

transferred from criminal custody to ICE detention, the Government was not required to give him pre-detention notice or a hearing. Dkt. # 12-1 at 15. Respondents acknowledge that Joseph "had some liberty interest in his continued freedom from detention while on parole," but state that this interest was conditional on the progression of his removal proceedings and compliance with certain conditions, including adherence to the law. Dkt. # 12-1 at 16. But Respondents have not provided the Court with evidence that Joseph was subject to any conditions on parole, let alone that his arrest for a DUI constituted a violation of these alleged conditions. Additionally, "courts typically draw a distinction where there has only been an arrest or pending charges, and courts have repeatedly found that the government violated due process regardless of a non-citizen's pending criminal charges when they are re-detained without notice or an opportunity to be heard." *Garcia Radillo v. Scott*, 2026 WL 2168044, at *3 (W.D. Wash. July 28, 2026).

Respondents also argue that Joseph's liberty interest when he was detained "was lessened due to his criminal action and that he was presently *not* free at the time he was transferred to ICE but was confined in criminal custody." Dkt. 12-1 at 16. But the case that Petitioner cites to support this assertion concludes that although a criminal charge may demonstrate a material change in circumstance relevant to the assessment of whether a noncitizen presents a danger or flight risk, the first *Mathews* factor still weighed in the noncitizen's favor. *See Sandhu v. Noem*, 2026 WL 607701, at *2 (W.D. Wash. Mar. 4, 2026). Respondents cite no legal authority supporting their claim that because *police* detained Joseph for a DUI arrest, the Government was not required to give Joseph due process for the termination of his parole before *ICE* detained him.

Regarding Joseph's circumstances, Respondents further contend that under *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), a pre-deprivation hearing is not appropriate in every situation. Dkt. # 12-1 at 16-17. But other courts in this District have rejected that argument:

> *Zinermon* does not suggest there *may be special cases*; rather, it discusses a single, discrete "special case" known as "the *Parratt* rule" . . . . The *Parratt* rule applies to a unique subset of deprivations where there is no practical way that "predeprivation procedural safeguards *could* address the risk of deprivations" because the nature of the deprivation is such that it cannot be foreseen by the state . . . Under the unusual circumstances where pre-deprivation process is not practicable "because of the random and unpredictable nature of the deprivation" at issue, the *Parratt* rule holds that a tort remedy provides the process that is due.

*Sarwari v. Wamsley*, 2026 WL 279968, at *4 (W.D. Wash. Feb. 3, 2026) (quoting *Zinermon*, 494 U.S. at 132) (emphasis added); *see also Espinoza Palacios v. Hermosillo*, 2026 WL 686138, at *9 (W.D. Wash. Mar. 11, 2026). The *Parratt* rule does not apply here, where ICE was informed in advance of Joseph's arrest, so his re-detention by ICE was not random or unforeseeable. *See Espinoza Palacios*, 2026 WL 686138, at *9.

Finally, Respondents argue that under Joseph's circumstances, post-deprivation due process is sufficient. Dkt. # 12-1 at 16-17; *see Sandhu*, 2026 WL 607701, at *3; *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *11-12 (E.D. Cal. Aug. 28, 2025). But courts in this District have concluded that, even when a noncitizen has been arrested or charged, but not convicted, of a crime, when the noncitizen is re-detained without pre-deprivation notice and a hearing, release is the appropriate relief. *See Musaev v. Hermosillo*, 2026 WL 925611, at *8 (W.D. Wash. Apr. 6, 2026) (collecting cases); *Garcia Radillo*, 2026 WL 2168044, at *3; *Singh v. Noem*, 2026 WL 265670, at *5 (W.D. Wash. Feb. 2, 2026).

C. Josue David Quintero-Latan

Respondents contend that Petitioner Quintero-Latan was released on humanitarian parole after an IJ entered a negative credible fear finding. Dkt. # 12-1 at 18-19. But Respondents do not submit any records of Quintero-Latan's release on parole, and there is evidence in the record that Quintero-Latan was released on an OREC after the negative credible fear finding. Dkt. # 1-3. Nonetheless, Respondents argue that because Quintero-Latan is subject to a final removal order and "ICE now believes they are able to expeditiously remove [Quintero-Latan] to Venezuela," he was not entitled to any pre-detention notice or hearing. Dkt. # 12-1 at 19. But Respondents do not cite legal authority supporting that claim, and courts in this District have concluded that re-detainment after release on an OREC or humanitarian parole requires pre-detention notice and a hearing. *See, e.g.*, *Hernandez*, 2026 WL 933361, at *3; *Singh v. Bondi*, 2026 WL 538414 (W.D. Wash. Feb. 26, 2026).

## IV

## CONCLUSION

For these reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1) and ORDERS that Petitioners be released from custody within 24 hours of this Order, subject to the same conditions of release that governed before they were re-detained. The Court further ORDERS that Petitioners shall not be re-detained unless and until they are provided with adequate notice and a hearing before a neutral decision maker to determine whether re-detention is appropriate, in accordance with all applicable laws. Petitioner may move for attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 18th day of September, 2026.



John H. Chun
United States District Judge